### TAPPAN *vs.* BROWN.

Where a person receives a *deputation to a public office*, which entitles him by statute to a certain *per centage* upon the fees and emoluments of the office of his principal, and on receiving his appointment, enters into an agreement to perform the duties of his office at a *fixed salary*, such agreement being in violation of the act against buying and selling offices, is *void*, although it be not certain that the *stipulated sum* would be less than the *per centage* allowed by law.

Where such corrupt agreement has been entered into, although the duties of the office have been faithfully performed by the deputy, no action lies by him against his principal for the recovery of his portion of the fees and emoluments received by the principal.

ERROR from the superior court of the city of New-York. Brown was the public *inspector of flour* and meal in the city of New-York, and Tappan was *one of his deputies* from the 15th March, 1827, to the 5th April, 1828. Tappan brought an action of assumpsit against Brown, claiming to recover 25 *per cent.* of the fees of office received by Brown during the above period, which claim amounted to upwards of $2500. By the act regulating the inspection of flour and meal, the inspector in the city of New-York is authorized to appoint *as many deputies* as he thinks proper to assist him in the execution of his office, and to displace them at pleasure; and by the same act, he is required to pay to his *deputy*, if he employs only *one*, 33⅓ per cent. of the net amount of the fees and emoluments to which he is entitled by virtue of the act; and where *two deputies* are employed, 25 per cent. of the same to each of them. 2 *R. L.* 320, § 1 and 6. Therewas evidence that two sons of the defendant and one Hicks had been appointed deputies previous to the appointment of the plaintiff; that one of the sons received *one-third* of all the fees, and the other a salary of

NEW-YORK,
May, 1832.

Tappan
v.
Brown.

$900 per annum; that the *plaintiff* had agreed to serve as a deputy inspector for a salary of $500 per annum; and that Hicks was to receive $2 per day as a compensation for his services. It was proved that the defendant had paid $409 to the plaintiff, and that the balance of the sum of $500 had been paid into court. The defendant had a verdict, upon which judgment was entered, after an application to the court below for a new trial, which was refused; and the case being turned into a bill of exceptions, was brought by the plaintiff into this court by writ of error.

*S. A. Foot*, for the plaintiff in error, contended that from the bill of exceptions it was manifest that *Brown* had only *two deputies*, of whom *Tappan* was one; that by the act against buying and selling of offices, 1 *R. L.* 109, § 1, the agreement that Tappan should receive a salary of only $500 instead of *one-fourth* of the fees and emoluments of office, was void; that notwithstanding that the agreement was void, the appointment of Tappan as a deputy was valid, and continued so until conviction and judgment of forfeiture; and that all official acts done by him are by the last cited act valid, notwithstanding they were performed under an appointment contrary to the act. He also insisted that the rule that the parties are in *pari delicto* did not apply to this case. The plaintiff, by his services, earned the fees and emoluments, and one-fourth of their amount belonged to him by the express provisions of the statute, which portion was received by the defendant, not as his own, but as the money of the plaintiff. Admitting that such monies were received in pursuance of an illegal agreement, still the defendant cannot hold them as against the plaintiff; for it is a well settled rule, that when one person receives money to the use of another, on an illegal contract, he is not allowed to retain it, but must pay it over to the person for whose use he receives it. 2 *Comyn on Contracts*, 113. *Tenant* v. *Elliott*, 1 *Bos. & Pul.* 3. *Farmer* v. *Russell, id.* 296. The plaintiff need not resort to the illegal contract in support of his action; he relies upon the contract which the law implies, that the party receiving money belonging to another shall pay it to whom it belongs.

*W. M. Price,* for the defendant in error. If at the time of the appointment of the plaintiff there were already two deputies, the statute provisions for compensation were exhausted, and the defendant was at liberty to contract with the plaintiff upon such terms as he saw fit. The verdict was subject to the opinion of the court below, and it has adjudged that two persons were appointed deputies previous to the plaintiff's appointment. But if otherwise, the plaintiff's claim rests upon his appointment, and having entered into an agreement forbidden by law, he is declared by the statute *disabled* from holding his appointment. No title to the office ever vested in him, and consequently no proceeding to divest was necessary. The saving clause in the statute as to the validity of the acts of the officer is not for his benefit, but for that of the public. The cases cited on the other side do not support the plaintiff: the fees and emoluments of the office of inspector were not received *to the use* of the plaintiff; he had no title to them, for that was divested *eo instanti* the appointment was conferred.

*By the Court,* NELSON, J. It is conceded by the counsel on both sides that the agreement between the parties comes within the act against buying and selling offices, 1 *R. L.* 109 ; the first section of which provides, that if any person bargain or sell any office or deputation of any office, or receive, have or take any money, or fee or profit, directly or indirectly, or take any promise or covenant, &c. to receive any money, fee, &c. for any office, or deputation of any office, or to the intent that any person should have, or enjoy the office, or deputation of any office, every such person who shall bargain, &c. shall not only lose and forfeit such office, and the right to appoint deputies ; but every person who shall give or pay any sum of money or fee, or make any promise, agreement, &c. for any such office, or deputation, shall immediately on paying such money or fee, or on making such promise or agreement to pay, be adjudged *a disabled person,* in law, to all intents and purposes, to have, exercise or enjoy such office or deputation ; and every such bargain, sale, promise, agreement, &c. shall be void. The second section confirms all acts of such officers or

deputies while discharging the duties of the office, until displaced.

There can be no doubt the agreement in this case comes within the spirit, if not the letter of the first section above recited, as it secures to the inspector the excess of the fees or perquisites fixed by law as a compensation to the deputy, over and above the $500 agreed to be received. It was notorious that the statute compensation vastly exceeded the sum stipulated by the parties, and the agreement no doubt was made upon that basis; but if by possibility the former might exceed the latter, the agreement is corrupt, as affording a chance to the inspector of receiving, in the language of the statute, money, fee, reward, or profit, for making the deputation, or for exacting an agreement by which he might receive such money or profit. The act that denounces as void the agreement which secures to the inspector a reward for making the appointment of a deputy, of itself includes a denunciation of an agreement which secures by possibility such reward. The principle is the same, and the difference only in degree, and such has been the decisions under this act in the English courts. 5 *Bac. Abr. tit. Officers,* 196, *and the cases there cited.* It is equally clear to me, that the appointment of the plaintiff to the office of deputy is so connected and interwoven with this corrupt agreement that it is impossible for the court, upon any sound construction, to separate them. The one was the consequence of the other, and so understood and intended by both parties; and to permit the plaintiff to recover the statute compensation, would be only disaffirming a part of the illegal agreement, and confirming the residue. It would be confirming the defendant's part of it, to wit, the appointment, and disaffirming the plaintiff's, to wit, that part which secured the reward for the office. I do not say that one part was the consideration for the other, technically speaking, but the whole was one entire arrangement, and if one part is void the whole must be. The parties are therefore in *pari delicto,* and the law will help neither.

I have examined attentively the cases in 1 *Bos. & Pul.* 3 and 296, so much relied upon by the counsel for the plaintiff, but cannot think them applicable to the case. In the first

case, the defendant, a broker, effected an insurance for the plaintiff on a ship, which was void under an act of parliament; the ship was lost, and the underwriters paid the insurance money over to the defendant, for the plaintiff. The defendant refused to pay it to the plaintiff, setting up the illegality of the insurance ; an action for money had and received was brought, and the plaintiff recovered. The true ground of this recovery, I consider, as given by Heath, J. in *Farmer* v. *Russell,* 1 *Bos. & Pul.* 296, "that whether the consideration be good or bad, a man may recover his own money." In both the cases in *Bos. & Pul.* one of the parties to the illegal contract had paid over the money for the plaintiff to his agent, which was the same in judgment of law as if it had been paid directly to him ; the illegal contract was out of the question, and the rule *pari delicto* did not apply, though Rooke, J. in *Farmer* v. *Russell,* who dissented, gives some strong reasons against the recovery on the ground of the defect of the plaintiff's title to the money.

In this case, there is no pretence for saying that an action for money had and received would lie for these fees, or that the defendant has received any money belonging to the plaintiff, in that sense of the term. The whole fees of the office belong to the inspector by the terms of the act, 2 *R. L.* 322, § 6, one part of them as much as another, and he is indebted to the deputy for his compensation ; the *per cent.* is given in the statute merely as a rule to ascertain the amount of it. The plaintiff could only recover for work, labor and services rendered as deputy, not for money had and received. It is true, in this case, the amount of compensation given by the statute which the plaintiff is seeking to recover, is independent of the illegal agreement, because it required none to fix it ; but the title to it, which will be more fully examined under another head, can only be supported by that agreement. As before remarked, the one cannot be separated from the other. Not so in the cases above referred to ; there the title to the money could not be questioned or litigated ; it was conceded by paying over the money for the benefit of the plaintiff, and upon that ground the cases were decided. This is admitted by Chief Justice Eyre, 1 *Bos. & Pul.* 301, when he says, " if

it be possible to mix the original transaction with the contract on which the action is brought, I agree with my brother Rooke in all his conclusions."

But besides the ground upon which the decision of the court below was placed, and which I have already examined, there is another I deem entirely decisive of this case, which is, that the whole shews the plaintiff has no *right* or *title* to these fees, or any other compensation for his services *as deputy inspector*, because, as regards every other consideration except the rights of the public or third persons, he was not a deputy inspector after the corrupt agreement. The inspector was incapable of making the appointment, and the plaintiff of receiving it, by the strongest terms that could be used in the act. The former, it is declared, shall *"forfeit his office, and the gift or nomination of such deputation,"* and the latter *" shall be adjudged a disabled person in law,"* to all intents and purposes. The 2d section was intended only to confirm their official acts, so far as the public or third persons were concerned, but not to secure to the parties the perquisites or profits of an office which they were exercising under an arrangement so effectually denounced. Neither party has any merits or claim to compensation, and the whole policy of the act forbids it. Whether an officer *de facto*, who is in the exercise of his office in good faith, believing his appointment valid, can recover the legal compensation for his services, it is not necessary now to decide. I doubt whether he can. Our act against the sale of offices is taken substantially from the 5th and 6th *Ed.* 6, which may be seen at large in 5 *Bac. Abr. p.* 193, *tit. Offices and Officers.* I have seen no cases upon this point decided under that act ; but the 25 *Char.* 2, commonly called the *test act,* is so far analogous, that I consider the decisions under it as entirely applicable to the act under consideration. By that act, all officers, civil and military, with exceptions mentioned, and all who have any fee, &c. shall take the oaths of allegiance and supremacy and test the next term, and receive the sacrament within three months, &c., and in case of neglect, *shall be disabled to hold the said offices.* It has been decided under this act, that the persons disabled to hold the offices by not complying with its provisions within the specified time, lose

their right to the profits thereof, from the time such disability

begins, which is at the expiration of the time to qualify mentioned in the act; and as to the validity of their acts, the only doubt which seems ever to have existed was, whether the official acts of such officers were valid for any purpose under the strong language of the statute. It is, however, decided that their acts, while under such disability, may be valid as to the public or third persons. *Bacon's Abr. tit. Offices and Officers*, 190. 1 *Hawk.* 16, 17. See also 5 *Wend.* 231. The decisions under this English act must of course have related to the fees and official acts of the officers before conviction and judgment of forfeiture; for after that, there could have been no question as to either. As before stated, it is most manifest that the 2d section confirming the acts of the officers while thus disabled, was for the convenience and protection of the public, and should not be so construed as to protect parties who have so grossly violated the law. It would be absurd, and a reflection upon the legislature, to believe that after having so carefully guarded appointments to office, and so justly denounced corruption by the penalty of forfeiture, they should specially provide for the protection of the transgressor, and the security to him of the emoluments of the office, till his iniquity was discovered.

On either ground above stated, I am of opinion the plaintiff cannot recover.

Judgment of the court below affirmed with single costs.