1836.

Becker
v.
Ten Eyck.

---

## BECKER *vs.* TEN EYCK.

The sheriffs of the several counties, except the county of New-York, are the keepers of the county jails, and are entitled to all the fees and perquisites of such office.

The sheriff may keep the jail in person, or he may employ under him as many deputy keepers as he thinks fit, and may allow them such compensations for their services as shall be agreed upon between him and them, either by way of salary, or by allowing them the whole or a portion of the perquisites to which he is entitled as the principal keeper.

So the sheriff may contract with his under sheriff and deputies for the discharge of the duties of their several trusts, either for a specific compensation or for a reasonable proportion of the fees and emoluments arising from the performance of such duties. But an agreement of a deputy to allow to his principal a sum in gross, not payable out of the profits of the office, and which may therefore exceed such profits, is a violation of the statute which prohibits the buying and selling of offices.

Where the deputy of a public officer is by law entitled to certain fees or perquisites in virtue of his character of deputy merely, if he agrees to give to the officer appointing him a portion of such fees or perquisites, it is a purchase of the deputation; and the parties to such agreement are guilty of a violation of the statute against the buying and selling of offices.

THIS was an appeal from a decretal order of the vice chancellor of the third circuit. The defendant, C. A. Ten Eyck, was sheriff of the county of Albany, during the years 1826, 1827 and 1828, and the complainant was his under sheriff and jailer. The complainant, during the three years, purchased the fuel, lights, provisions and supplies for the jail, hired turnkeys, cooked the food of the prisoners and caused the jail to be cleansed, &c. at his own expense. The accounts for these expenditures, together with the fees for receiving and discharging prisoners in criminal cases, were made out by him annually, in the name of the sheriff, and presented to the board of supervisors for their allow-ance, and were audited and allowed in the name of the sheriff, and were thus entered in the books of the county treasurer. The amount allowed during the two first years, was paid to the complainant, by the county treasurer, on the orders or with the assent of the sheriff; out of which amount the complainant in each year paid to the sheriff $200. The amount which was thus allowed for the last year, in the name of the defendant Ten Eyck, was $3035,-82 ; of which sum $436,13, was for the fees of receiving and discharging prisoners, and of transporting two prison-ers to the House of Refuge, and the residue was for board and clothing prisoners, cleaning the jail, and for wood, oil, and other supplies for the jail. The defendant Ten Eyck, forbid the county treasurer from paying over the last year's allowance to the complainant until a settlement should be made between them, claiming a right to a share of the profits of keeping the jail and dieting the prisoners, &c. during the three years. The complainant thereupon filed his bill in this cause against Ten Eyck and the county treas-urer, to restrain the former from receiving the amount thus allowed, and to have the same paid over to him.

The complainant alleged in his bill that the allowance of the account in the name of Ten Eyck was a matter of form only, as he was the sheriff of the county, but that the whole amount thereof belonged to the complainant ; that no spe-cial agreement existed between him and Ten Eyck that he should pay the latter any part of the accounts annually al-

1836.

Becker
v.
Ten Eyck.

April 19.

lowed for such jail expenses; and that the sums which he had paid to Ten Eyck the two previous years, had been obtained by threats of removing him from his office of under sheriff and jailer; and that upon a fair adjustment of his accounts with Ten Eyck, as his under sheriff, a balance would be due to the complainant. An arrangement was afterwards entered into between the parties, by which the amount allowed by the supervisors for the last year was received from the county treasurer and placed in the hands of a third person to pay out a portion thereof to those who had furnished wood and provisions to the complainant for the use of the jail, and to deposit the residue in bank, to abide the decision of the court. By the answer of the defendant he admitted that the complainant had kept the jail and supplied the prisoners with food, &c. and had purchased the wood and other supplies, and hired turnkeys and procured the jail to be cleansed; but he insisted that it had been all done by the complainant as his agent. The defendant also alleged that previous to his appointing the complainant his under sheriff and jailer, other applicants had made him offers of different sums of money to be paid to him for his proportion of the profits from the jail, which he communicated to the complainant before his appointment, and the complainant promised and agreed to give him one half of all the *fees and perquisites* of the office of under sheriff and jailer. The defendant also alleged, in his answer, that the complainant had refused to render an account of the fees and perquisites of the office of under sheriff and jailer, the one half of which, as the defendant had been informed and believed, amounted to at least $500 per annum.

The cause was heard before the vice chancellor upon the pleadings and proofs. He made a decree, and directed a reference to a master to take an account between the parties, upon the principle of crediting the sheriff with all allowances made by the board of supervisors on account of the jail expenses during the three years, and all monies received by the complainant as under sheriff; and crediting the complainant for monies paid or liabilities incurred by him for the necessary expenses and supplies for

the jail, and a reasonable compensation for his services and expenses as under sheriff and jailer ; and charging him for the provisions which he had used for his family out of those which were purchased for the use of the jail, and for the privileges which he had enjoyed as jailer. The decree also contained the usual directions for the production of books and papers, and for the examination of the parties on oath ; and the question of costs, and other questions, were reserved. From this decree the complainant appealed.

*J. King & J. M'Kown*, for the complainant.

*A. Van Vechten & J. T. B. Van Vechten*, for the defendant.

THE CHANCELLOR. I can see no legal objection to the principles upon which this decree is based, if the pleadings and the facts in the case can justify the court in arriving at the conclusion that the complainant was acting as a mere agent of the defendant, in discharging the duties of under sheriff and jailer, and in supplying the jail ; and that he was to be compensated for his services upon the principle of a quantum meruit merely. By the statute which was in force when this controversy originated, and which does not appear to have been altered in this respect in the recent revision of the laws, the sheriffs of the several counties in this state, except in the city and county of New-York are the keepers of the county jails, for the confinement of prisoners upon criminal as well as on civil process ; and they are legally entitled to all the fees and perquisites belonging to such office. (1 *R. L.* 422, § 7, 380, § 75, 2 *R. S.* 754, § 1.) The expression in the act of 1813, that " the sheriffs respectively, shall put in such keepers for whom they will answer," does not render it imperative upon the sheriff to appoint any individual to the office of keeper of the jail, but merely that the sheriff shall be answerable for the acts of those to whom he entrusts the offices and duties of deputy keepers under him. Or, in the language of the revised statutes, that the several sheriffs may appoint keepers of such jails and pris-

ons, for whose acts they shall be responsible. The sheriff, therefore, may keep the prison in person, or he may employ so many deputy keepers under him as he may think fit; and may allow them such compensation for their services as may be agreed upon between him and them, either by way of salary or by allowing them the whole or a portion of the perquisites to which he is entitled as the principal keeper of the county jail. The complainant, in this case was but a deputy of the sheriff in the keeping of the jail, as he was, in the character of under sheriff, a general deputy in the service of writs and other process; and it was as competent for the sheriff to contract with him for the discharge of the duties of the one trust as the other for a specific compensation, or for a reasonable proportion of the fees and emoluments arising from the performance of such duties.

The act of the 7th of February 1788, against buying and selling of offices, (1 R. L. of 1813, p. 109,) was only a re-enactment of the provisions of the statute 5th and 6th, Edward 6th, chapter 16th, on the same subject; under which statute it has been repeatedly decided that where the duties of an office can be discharged by deputy the principal may agree with his deputy to allow him a fixed compensation for his services, or that the deputy shall permit the principal to retain a certain proportion of the profits of the office. (Welch v. Baden, 3 Keb. 717; Gulliford v. De Cardonell, 2 Salk. 466; Com. Rep. 1 S. C.; Ballantine v. Irwin, Fort. Rep. 368 : Machen v. Stanyon, 1 Bro. P. C. Toml. ed. 133.) But an agreement of a deputy to allow to his principal a sum in gross, not payable out of the profits of the office, and which may therefore exceed such profits, is a sale of the deputation, and a violation of the statute. This was so held, in the case of Godolphin v. Tudor, (2 Salk. 468; Willes' Rep. 575 n.) by the court of Kings Bench in England, in the reign of Queen Anne; and the judgment was afterwards affirmed in the house of Lords. (1 Bro. P. C. Toml. ed. 135.) That case was three times argued in the court of Kings Bench, and may therefore be considered as a leading case on this subject. It was there settled that if an officer has an annual salary, or other profits amounting

to a certain sum yearly, a deputation of such office reserving to the principal out of it, a sum not exceeding the certain profits, is not a sale of the office, or of the deputation, contrary to the statute. So if a deputy be appointed to an office consisting of uncertain profits, paying any sum whatever *out of such profits,* the deputation and contract for the payment are good, because the deputy is to pay out of the profits only, and cannot be charged for more than he receives. But if an office consisting of uncertain fees be granted to a deputy, together with all its fees, reserving a certain sum to be paid at all events, it is a sale of the office, and not a grant of a deputation reserving a portion of the profits; and an agreement to pay such sum is void by the statute. (*See also Garforth* v. *Feron,* 1 *Hen. Bl. Rep.* 328 ; *Noel* v. *Fisher,* 3 *Call's Rep.* 215 ; *and Salling* v. *McKinney,* 1 *Leigh's Rep.* 42.)

The cases to which I have referred, all go upon the principle that the sheriff or other officer making the deputation is legally entitled to the fees or profits; and that the deputy is only entitled to such parts thereof, or to such other compensation, as the person appointing him thinks proper to agree to give him for discharging the duties of the office as such deputy. But there is another class of cases in which the deputy is by law entitled to certain fees or perquisites in virtue of his character of deputy merely. In cases of that kind, an agreement by the deputy to give to the officer appointing him any portion or share of the fees or perquisites which legally belong to the deputy as such, is a purchase of the deputation, and a direct violation of the statute. The case of *Tappan* v. *Brown* (9 *Wend. Rep.* 175,) which was relied upon by the appellant's counsel on the argument, was a case of this description. The statute in that case, gave to the deputy as such, a certain share of the fees for the inspection of flour ; to which share the principal inspector had no legal right or claim. The agreement of the deputy, therefore, to accept a sum in gross which was far less than his legal share of the inspection fees, and to let the officer appointing him retain the residue, was in substance an

1836.

Becker
v.
Ten Eyck.

agreement to purchase the deputation, and to give to the officer appointing him a portion of the legal fees of the deputy as a consideration of such purchase; and was a palpable violation of the statute. And in the state of Massachusetts, where the deputies of the sheriff are by law entitled to three-fourths of the fees upon the writs and other process executed by them, a bond from the deputy to the sheriff to secure to the latter the payment of more than twenty five per cent upon the amount of such fees, was very properly held to be illegal and void. (*Farrar* v. *Barton*, 5 *Mass. Rep.* 395.)

The decree of the vice chancellor, in this case, proceeds upon the ground that there was no agreement between the parties as to the keeping and supply of the jail and the fees and profits of that situation; that the complainant must therefore have acted merely as the agent of the sheriff, and that he is to account as such. I am satisfied, however, from the pleadings and proofs, that such was not the understanding of the parties. The answer of the defendant, which is responsive to the bill in this respect, states explicitly that it was agreed between him and the complainant, before the appointment of the latter to the offices of under sheriff and jailor, that he should give to the defendant one half of the fees and perquisites arising from such appointment. As there is no evidence whatever to contradict this part of the answer, it is not only evidence that there was an agreement on the subject between the parties, but also of the express terms of that agreement. The account between the parties, therefore, must be taken upon the basis of that agreement. I think also, the evidence shows, very satisfactorily that the complainant in buying wood and provisions &c., for the use of the jail purchased on his own account and not as the agent of the defendant Ten Eyck; and that the several persons from whom the complainant obtained those supplies had no legal claim upon the sheriff for payment. The only perquisites, therefore, which could arise from the furnishing of the jail must be the difference in value between the diet furnished to the prisoners and fuel and lights, &c., furnished for the jail, and the amount actually allowed by

the supervisors therefor. Whatever that difference may be the defendant is entitled to the one half thereof under this agreement. He is also entitled to one half of the fees allowed by law for receiving and discharging prisoners, and one half of the fees of transporting the two prisoners to the House of Refuge. And if the defendant has furnished any thing for the use of the jail which has been allowed in these annual accounts' by the supervisors, it should be credited to him in the taking of the account in this cause.

As the appointment of under sheriff and jailor was made at the same time and under the same agreement, it is proper that the account of the fees and perquisites of both situations should be taken together ; so that the fund in controversy may be distributed according to the equitable rights of the parties. And there is no doubt that a sufficient foundation is laid for such a decree in the pleadings in this cause, and that the filing of a cross bill would be a useless proceeding.

The decree of the vice chancellor must be reversed or modified, without costs to either party, so as to declare that the defendant is entitled to the one half of the fees and perquisites of the offices or situations of under sheriff and jailor ; and that the complainant is entitled to the other half, during the three years ; and to direct a reference to a master to take and state an account between the parties upon the principles above suggested ; reserving the question of costs, except as to the costs on this appeal, and all other questions and directions, until the coming in of the report.