### JOHN EDDY v. GEORGE CAPRON.

An order for the payment of money, drawn by a physician of one of the marine hospitals
of the United States upon the collector of the port, held, in a suit against the drawer to
be void, as against public policy, it being proved to have been given in consideration
that a former physician of the same hospital would resign the office in his favor;
although the former physician had not promised to use any influence to procure the
appointment of his successor, and was entitled to no retiring pension.

The facts that the retiring officer resigned because desirous to remove to a distant part of
the country, and that, in requiring his successor to pay for his resignation he was, in
truth, only requiring him to repay a portion of the money, which, that successor having
been his predecessor also in the same office, had obtained of him, under a like contract,
held not to vary the application of the rule of policy.

ASSUMPSIT upon an order for $100, dated April 3, 1854, and
drawn by the defendant, who then held the office of surgeon of

the marine hospital of the United States at the port of Providence, in favor of the plaintiff, upon Gideon Bradford, then collector of said port. Plea, the general issue.

The case was tried before the chief justice, with a jury, at this term; and a verdict having been rendered for the plaintiff, a motion for a new trial was now made, for misdirection to the jury in matter of law, the particulars of which are fully stated in the opinion of the court.

*Manchester* for the motion.

*Eddy* against it.

AMES, C. J. This is a motion for a new trial, alleging several distinct grounds, all of which, however, were waived at the hearing, with the exception of one, founded upon a direction given by me to the jury at the trial of the cause. It appeared that the order sued was one of three, for $100 each, drawn by the defendant, then physician of the marine hospital of the port of Providence, upon Gideon Bradford, collector of that port, requesting said Bradford to pay to the plaintiff, on the last of December, 1854, the sum of $100 from the moneys which should then be due to the defendant for medical services rendered to the marine hospital, which the collector, however, refused to accept. The consideration of the three orders was proved to have been the resignation by Dr. Edward V. Hathaway of the said office of port physician in favor of the defendant, so that he might receive the appointment; and it was further proved that in consequence of the above arrangement, Dr. Hathaway did resign the office,—that the defendant subsequently was appointed to it, and thereupon drew the three orders above, the last of which, the others having been paid, was the subject of the suit. There was no evidence of any promise by Dr. Hathaway to recommend the defendant as his successor, or to exert any influence to procure his appointment as such, or that he had done, or was expected to do, either It was proved, on the other hand, that some few months previous, Hathaway had paid to the defendant the sum of $500, for resigning the same office and recommending *him* as a suitable candidate for it, in consequence of which resignation and recommendation, Hathaway had received the appointment; but subsequently resolving

to remove to California, made the above arrangement with the defendant, as a fair mode of getting back a portion of the consideration paid by him to the defendant for the defendant's resignation of the office, and for procuring *his* appointment to it. For the purposes of the trial, and requesting the counsel for the defendant to save the point and bring it before the full court for decision, I ruled, that the consideration proved was a lawful and sufficient consideration to support the contract to pay ; and it appearing that the plaintiff,—a friend of Dr. Hathaway,—had advanced the amount of the order, and received it from Hathaway and the defendant, as the representative of his advance, I directed the jury, upon these facts, if by them found, to return, as they have done, a verdict for the plaintiff.

At the trial, no question was made of the plaintiff's knowledge of the nature of the transaction upon the faith of which he advanced his money, and no proof was offered as to it; the ruling rendering it unnecessary.

We are all satisfied that the direction given to the jury was wrong, and that a new trial in this case must be granted. It is true that the numerous cases upon this subject found in the English Reports turn, in general, upon the statute 5 & 6 Edw. VI. ch. 16, §§ 2, 3, avoiding all agreements for the sale or deputation of certain offices, concerning, in the main, the administration of justice and of the king's revenue, and the keeping of his places of strength, and upon the 49 Geo. III. ch. 126, extending the provisions of the statute of Edward, with certain specified exceptions, to all offices in the gift of the crown,—to all commissions, civil, naval, and military,—to all offices and deputations to office in the departments, or under the appointment or control of the high officers of state, and other officers, civil and military, named in the statute, as well as in the control of any other public department or office of government, in any part of the United Kingdom, or any of his majesty's dominions ; and lastly, to all offices, commissions, places, and employments, belonging to, or under the appointment or control of the East India Company. It is also true that we have no similar statute in this state ; yet we have no doubt but that all contracts based upon the sale of, or traffic in offices of any de-

scription, at this day, and in this country, are void at common law, as against public policy.

By the theory of our government, all offices, whether civil or military, whether general, or as in this case, professional, are trusts held solely for the public good ; and in which no man can have a property to sell, or can acquire one by purchase. Appointments to them are presumed to be made solely upon the principle of *detur digniori;* and the office is to be borne by the appointee for the public good, as long as his services are required in it; and any practice, whereby the base considera-tion of money is brought to bear, in any form, upon such appointment to, or resignation of office, conflicts with and de-grades this great principle and policy. The services performed under such appointments are paid for by salary or fees, pre-sumed to be adjusted by law to the precise point of adequate remuneration for them. Any premium paid to obtain office, other than that which the law establishes or regulates, interferes with this adjustment, and tempts to peculation, overcharges, and frauds, in the effort to restore the balance thus disturbed. In short, without dwelling longer upon so obvious a policy as that involved in such transactions, the moral sense of every person educated in a free country anticipates all reasonings upon such a subject, and, as it were, *instinctively* condemns all agreements impugning this policy, as at war with the whole theory of our government. At the trial, I felt this ; but recol-lecting that I sat to administer an established system, and not merely to follow out my own notions of policy ; and knowing that the decisions upon this subject had turned principally upon statutes, and not remembering that any had gone quite so far as to avoid a contract stipulating for a bare resignation, ordinarily deemed the exercise of a right of the officer, and which involved no further expense,—in the way of a retiring allowance,—to the public, nor required nor implied any recom-mendation or influence to be used for the sake of reward in procuring an appointment to be made to the vacancy thus created, I felt bound to rule as I did, until an opportunity could be given to consider the authorities, in view of what seemed to me to be the special equities of the case. That opportunity

has now been had, and we have examined nearly all the cases from *Ellis* v. *Ruddle*, 2 Lev. 151, to *Graeme* v. *Wroughton*, 32 Eng. L. & Eq. 561, decided last year by the court of exchequer in England, besides the cases at law in New Hampshire, (*Meredith* v. *Ladd*, 2 N. H. 547; *Carleton* v. *Whitcher*, 5 N. H. 196, 200,) and Kentucky (*Dutten* v. *Rodes*, 3 Marsh. 433,) and the cases at law and in equity in New York, (*Tappan* v. *Brown*, 9 Wend. 175; *Gray* v. *Hook*, 4 Comst. 449, and *Becker* v. *Ten Eyck*, 6 Paige, 68.

We do not find any case which comes up quite to the case at bar. In *Harrington, Executor*, v. *Du Chatel*, 1 Bro. Ch. Cas. 124, Lord Thurlow, after hearing, perpetually enjoined a suit upon an annuity-bond, granted by the plaintiff's testator to the defendant's testator, who had been the travelling tutor of Lord Rochford, then the king's groom of the stole, it appearing, that the bond in question had been, with another for the benefit of another person, stipulated for by his lordship as the price of a recommendation to the office of one of the pages of the presence, the recommendation to vacancies in which fell to his lordship in virtue of his groomship of the stole. Lord Thurlow doubted, at first, whether he should give relief, on the notion that the ground of relief constituted a good defence at law, but concluded to interpose, because a court of law at that time had never determined it to be a defence to a bond. He admitted that the office in question was not within the purview of the statute of Edward, but treated the traffic concerning it as against the public policy of the law, " and similar to marriage brocage bonds, where, though the parties are private persons, the practice is publicly detrimental." This decision of Lord Thurlow's, and upon the principle of public policy laid down by him, was approved by Mr. Justice Coltman, in the case of *Hopkins* v. *Prescott*, 4 Man. Grang. & Scott, 56 Eng. C. L. 596, the learned judge declaring that, if the contract in question " were not made void by the statute in question (5 & 6 Edw. I. ch. 16), I still think it would be void at common law." Still more recently, in the case of *Graeme* v. *Wroughton*, 32 Eng. L. & Eq. 569, Lord Thurlow's decision, and Mr. Justice Coltman's remark, were quoted, as if approved, by Chief Baron Pollock, in deliv-

ering his opinion in that case, which was a suit at law upon a bond given in consideration of the resignation of a majority in a regiment in the East India Company's service, and was deemed to fall within the purview of the 49 Geo. III. ch. 126. The cases from New Hampshire and Kentucky before cited, there being no statute forbidding the sale of offices in either of those states, were decided solely upon grounds of public policy; and the like doctrine was acted upon in New York, in a case not deemed to fall within the statute of that state in relation to this subject. *Gray* v. *Hook*, 4 Comst. 449.

These were either cases, however, of the direct sale of offices, or in which, in addition to the agreement to resign, there was a stipulation, for lucre, to recommend a successor; or where the resignation, procured in this way, brought upon the government or upon the East India Company, sooner than otherwise, the payment of a retiring allowance. This latter feature is found, too, in the leading case of *Parsons* v. *Thompson*, 1 H. Bl. 322, which was a suit brought by a late master joiner of the dockyard at Chatham, against his successor in regular order, previously *foreman* of the joiners, on an agreement in consideration of the retiring of the former as superannuated, to allow him, during life, extra pay from the dockyard books, in addition to his superannuation money. The case is valuable, however, because it does not seem to have turned upon any statute, but to have been discussed and decided in reference to the public policy of the law. The reasoning of Lord Loughborough, who delivered the opinion of the court, as remarked by the counsel for the defendant is, to some extent, applicable to the case at bar; for his lordship argues, that if the plaintiff resigned because he was no longer fit for the place, there is no consideration for the promise of the defendant, the case being like this, a case of simple contract; or if he resigned at the request and upon the promise of an allowance from the plaintiff, still being fit, then the promise is void, because " the public is deceived, the pension misapplied, and the service injured."

The case at bar is certainly not as strong as the case of *Parsons* v. *Thompson*, or the case of *Graeme* v. *Wroughton* ; for Dr. Hathaway, by resigning under the inducement of a pecuniary

offer, has imposed upon the government improperly, no pension or allowance to himself—such rewards of *civil* service being unknown under our government. At the same time, he. has either resigned because he was obliged to do so, in order to fulfil his design of removing to California, in which case there would be no consideration for the defendant's promise, or he has resigned because of it, and because of the money offered to him, and so the promise is void, on the ground, that the government is deprived of the services of an officer it had appointed by his being seduced from an office under it by private and unworthy motives. Whilst such a contract as this works this evil, in legal theory at least, on the one hand, it conflicts with the policy of the law in another way, on the other. The defendant, the successor of Dr. Hathaway, by virtue of the contract, is deprived of the fees allowed to him by the government as but a just reward for his professional skill, in a most interesting department of the public service, (and this order is, upon its face, an attempt to anticipate them,) and besides the direct ill consequences of this, he is thus, in an office of trust, involving the purchase of medicines at the expense of the hospital fund, and the admission and discharge of sailors, home and foreign, entitled to be healed out of the hospital fund, tempted to acts of peculation, overcharge, and fraud, in order to make up the recompense which the contract takes from him. It is true, that in this case, there are special circumstances which give to this transaction the color of a partial restoration to .Dr. Hathaway of what was wrongfully exacted of him by the defendant for procuring his appointment; and, as the case now appears to us, special equities in *his* favor, and in favor of the plaintiff who, for the purposes of this motion stands in his place, which it seems hard not to allow him the benefit of. At law, at least, in such transactions, the stern unvarying rule is "*potior est conditio defendentis;*" and as it seems to us, this rule equally applies, whether we connect or disconnect the two acts of traffic, in which the principal parties were engaged, in·relation to an office under the federal government.

For these reasons, a new trial in this case is granted, the costs of this motion to abide the event of the suit.