THE PEOPLE OF THE STATE OF NEW YORK ex rel. JOHN McEWAN, Respondent, v. WILLIAM H. KEELER, Appellant.

*Sheriff — common-law powers and duties of, cannot be transferred to an appointed officer — Const., art. 10, sec. 1 — 1882, chap. 251.*

Chapter 251, of 1882, provided that the Albany County Penitentiary should thereafter be the county jail of Albany county, and required the sheriff to remove the prisoners from the building then occupied as a jail to the penitentiary.   It made the superintendent of the penitentiary, who was appointed by the Board of Supervisors of Albany County, the jailer; gave him the custody and control of all persons confined therein, and required him to convey them to or from the jail when necessary or when directed by the sheriff.   The superintendent was required to give to the sheriff a bond in the sum of $15,000, conditioned for the faithful discharge of his duties as jailer.

*Held,* that in so far as the act deprived the sheriff of the custody and control of

the jail and the prisoners therein, and gave such custody and control to the superintendent of the penitentiary, it deprived the sheriff of common-law powers and duties pertaining to his office, and violated the provisions of section 1 of article 10 of the Constitution, requiring sheriffs to be chosen by the electors of the respective counties.

The question as to what duties of an officer, whose election is provided for by the constitution, may be transferred to another officer, and as to the power of the legislature to entirely abolish certain powers and duties, considered.

APPEAL from an order made at a Special Term granting a peremptory *mandamus* requiring the defendant, as sheriff of Albany county, to receive and approve a bond tendered to him by the relator pursuant to chapter 251 of 1882.

*Edward J. Meegan*, for the appellant.

*Peckham & Rosendale*, for the respondent.

BOOKES, J.:

Under the statute passed in 1882 (chap. 251) the relator, who is superintendent of the Albany County Penitentiary, executed, on the 1st day of January, 1883, the bond provided for in section 2 of that act, and had the same approved by the county judge. He then tendered the same to the respondent, the sheriff of Albany county, for his approval and acceptance. The latter refused to approve or accept the same, upon the ground that the statute was unconstitutional. Thereupon the relator obtained an order for a writ of *mandamus* to compel the respondent to accept and approve such bond. No question was made as to the form or sufficiency of the bond, nor was any question made as to the propriety of this remedy if the law was constitutional.

The learned judge who granted the order wrote no opinion. Indeed, it is quite evident that he gave no special consideration to the subject, as the parties were desirous of reaching a speedy decision in an appellate court.

The question therefore comes to us practically to be considered as an open question in the case, and the only question argued on this appeal has been the constitutionality of that statute. To that we shall therefore confine our attention.

It is claimed by the respondent that the statute is a violation of article 10, section 1 of the Constitution, which provides that sheriffs

shall be chosen by the electors of their respective counties, and the argument of the respondent is that the statute takes from the sheriff of Albany county and gives the superintendent of the penitentiary (an officer that is not elected) powers and duties which cannot thus be taken away.

On the part of the relator, as we understand, it is not disputed that a law which should take away all or practically all of the powers and duties of a sheriff and should give them to some officers not elected by the people would be a violation of the Constitution, even though it should permit the people to elect an officer who should have the name of sheriff, though stripped of all power and duty. And we think this must be so. The Constitution does not permit the legislature to evade its provisions by taking away the powers and duties of an officer made elective by that instrument and giving them to some appointee, leaving the people the poor privilege of electing an officer who is such only in name.

On the other hand, it is admitted by the respondent that to some extent the legislature may modify and regulate the duties which sheriffs are or were to perform. Perhaps the legislature might even abolish the duties and powers or some of them altogether, as obsolete and no longer needed. But the question here presented is not one of abolishing but of transferring powers and duties. It was even said on the argument that the legislature might require the punishment of convicts to be by confinement in penitentiaries instead of county jails, although the latter are and the former are not under the control of the sheriff. That would be a part of the punishment of crime as to which the sheriff's duties might be considered to be incidental.

The question then to determine is whether the present statute is a mere regulation of the sheriff's duties and powers, permissible under the Constitution, or whether it so transfers his duties and powers to an appointed officer as to infringe the meaning of that instrument.

Let us then, in brief, consider what the statute does. It makes the Albany County Penitentiary the county jail of the county and makes the superintendent the jailer. It prevents the sheriff hereafter from appointing a jailer. It gives the superintendent the custody and control of all prisoners confined therein as the sheriff

would have had if the law had not been enacted. Thus it will be seen that, as to all persons arrested under civil or criminal process, it takes away the custody and control and gives it to the superintendent. Notwithstanding that the sheriff is made liable by law for the custody of persons arrested in civil actions, this statute takes them out of his hands and places them in the custody of the superintendent. We need not discuss, but we cannot fail to notice the serious question which may arise as to the sheriff's liability in the case of an escape. Whether the bond provided for in the statute would be a sufficient protection will depend upon the amount involved in the orders of arrest which may be issued. Perhaps however this subject touches rather the wisdom than the constitutionality of the law.

The only authority in regard to prisoners left to the sheriff is to direct the superintendent to convey prisoners to and from said jail. The question then is whether the custody and control of the prisoners arrested under civil and criminal process is such a part of the sheriff's office as it existed at and before the adoption of the constitution, that such control cannot be taken from him and given to an officer elected by the people without a violation of that instrument. Blackstone, in his account of the power and duty of the sheriff, says that they are either; as a judge, as the keeper of the king's peace, as a ministerial officer of the Superior Court of Justice, or as the king's bailiff (1 Bl. Com., 343). He is bound to take all misdoers and commit them to jail for safe custody, and he may command all the people of his county to attend him, which is called the *posse comitatus*. Jailers are the servants of the sheriff, and he must be responsible for their conduct. (Id. 346.) This general statement is substantially correct now, and need not be enforced by citations. It has been the duty of the sheriff to arrest and confine all persons charged with crime, and to execute the process of the higher courts; and to discharge this duty he may summon the power of the county. A power so great the constitution provided should be intrusted only to an officer chosen by the people, thus returning to the old principles of English law (1 Bl. Com., 339); and those who framed that instrument may well have feared to give that power over the persons of citizens to anyone not chosen by them.

That the sheriff is by common law, and except for this statute, the keeper of the common jail, even when he acts through a jailer, will hardly be questioned. (*Becker* v. *Ten Eyck*, 6 Paige 68; *Wemple* v. *Glavin*, 57 How., 109, 113.) In the execution of process from the higher courts, such as orders for arrest, process for contempts and executions against the body, he is to arrest and confine persons against whom such process is issued, whenever such process is issued, and generally in criminal matters (excepting perhaps the cases of petty offenses and police regulations) he has the custody of persons charged with crime. Let it be considered then that the law is valid, and let us see what power would remain to him. He might arrest, but might not confine, under civil or criminal process or under proceeding for contempt. He might serve *mesne* process, and process *mesne* and final against property, and he might attend courts and summon juries, etc. All control and custody over persons charged with crime or amenable to civil process would be taken away after the act of arrest had been done. It is not necessary to say that the legislature cannot abolish some, or perhaps all of the duties of the sheriff. For instance, the legislature might abolish all imprisonment in civil cases, as well in cases of tort as on contract, and such legislation would destroy a part of the present duties of the sheriff. But the question, as above remarked, is not whether the legislature can abolish, but whether it can retain those powers and duties, and give them to an officer not elected. Upon this point the case of *Warren* v. *People* (2 Denio, 242) seems to be conclusive, and the reasoning therein is sound. It may be difficult to draw the line in regard to numerous instances which are suggested by the relator's counsel, of taking away from sheriffs certain special duties, and giving them to an appointed officer, and to say, as to each, whether it would be a violation of the constitution, or only a permissible modification of the sheriff's duties. If any general rule could be laid down, it would probably be that the common-law powers and duties pertaining to the office of sheriff could not be transferred to an appointed officer, whatever might be done as to powers and duties of another character. (*People ex rel. Wood* v. *Draper*, 15 N. Y., 532.) It is enough, however, to consider the present case. For the general doctrine on this question we need only refer to

*People ex rel. Bolton* v. *Albertson* (55 N. Y., 51) and *People* v. *Raymond* (37 id., 428), without quoting from these or similar cases; and in the application of that doctrine we cannot doubt that the custody of the jail and of the prisoners confined therein is one of those powers and duties which, by common law, belonged to the sheriff, and which continued to belong to him down to the adoption of the Constitution. In declaring, therefore, that the sheriff should be elected, the Constitution must have intended an officer who, among other things, should possess that custody. If it be possible to transfer this power to another, and an appointed officer, then other powers in like manner may be transferred to other officers, so that in the end the sheriff may be deprived of every power and duty which the common law gave him. (*State* v *Brunst*, 26 Wisc., 414.) We are, therefore, of the opinion that so far as the statute in question takes away custody of the jail and of the prisoners from the sheriff, and gives such custody to the superintendent, it is unconstitutional. It would seem to follow necessarily from this that the sheriff was not bound to accept or approve of the proposed bond.

There is a question remaining which is not before us but to which we may allude: Is that part of the statute valid which declares that the penitentiary shall be the county jail? It does not seem to be controverted that the legislature might declare what building should constitute the county jail; provided the custody of the building, and the prisoners therein, were to remain with the sheriff. And it may be urged that though part of this law be unconstitutional, yet the rest may be valid. This point has not been discussed. It was probably understood by both sides that the statute was a whole, and that if a principal part of it was unconstitutional and void, the rest must necessarily fall with it.

The order must be reversed, with ten dollars costs and printing disbursements, and the motion denied, with fifty dollars costs and disbursements.

Present — LEARNED, P. J., BOARDMAN and BOCKES, JJ.

Order for *mandamus* reversed, with ten dollars costs and printing disbursements, and motion for *mandamus* denied, with fifty dollars costs and disbursements against relator.