## Case No. 11,421.

PRIME et al. v. BRANDON MANUF'G CO.

BRANDON MANUF'G CO. v. PRIME et al.

[16 Blatchf. 453; 4 Ban. & A. 379.] [1]

Circuit Court. D. Vermont. July, 1879.

PATENTS—ASSIGNMENT—NOTICE OF OUTSTANDING RIGHTS—EFFECT OF FAILURE TO RECORD—EXTENSION—COSTS.

1. Where an assignment of a right under a patent refers to the patented improvement as

[1] [Reported by Hon. Samuel Blatchford, Circuit Judge; reprinted by Hubert A. Banning, Esq., and Henry Arden, Esq., and here republished by permission.]

being in use by a certain party, such reference is express information to the assignee of the fact of such use; and, the party referred to being in possession to the extent of such use, such possession is constructive notice of the claim of right under which the possession and use are had.

[Cited in Dueber Watch-Case Manuf'g Co. v. Dalzell, 38 Fed. 600.]

2. An assignment of a patent by a bankruptcy court to the assignee in bankruptcy of the bankrupt owner of the patent need not be recorded in the patent office, in order to prevail over a recorded assignment of the patent from the administrator of the bankrupt, made after the bankruptcy, as, by section 5046 of the Revised Statutes of the United States [14 Stat. 522], all patent rights of the bankrupt vest at once, by operation of law, in the assignee in bankruptcy.

3. A patentee, during the original term of his patent, parted with his right to an extension, and agreed to sign all necessary papers to secure the extension for the benefit of his grantee. Afterwards, for the purpose of showing to the patent office that he would own the extension, if granted, the full title to the extended term was conveyed to him, before the extension was granted. The extension would not otherwise have been granted. The grantee paid all the expenses of obtaining the extension, and all parties understood that he really was to own the extended term: *Held*, that the original instrument was binding, in equity, on the patentee; that the equitable right to the extended term was in the grantee; that, as the conveyance back to the patentee was made to deceive the patent office, it was inoperative; but that, as the original grantee of the right to the extension could not claim the extension except by availing himself of such inoperative instrument, the court would leave the parties where it found them.

4. The special act of congress of July 15th, 1870 (16 Stat. 657), authorizing an application for an extension to be made to the commissioner of patents, did not vary the positions or rights of the parties.

5. No costs allowed, on dismissing a bill and a cross-bill.

[This was a bill in equity by David W. Prime and others against the Brandon Manufacturing Company, and a cross bill by the Brandon Manufacturing Company against David W. Prime, for the infringement of letters patent. Complainants demurred to the cross bill, and the demurrer was overruled. Case No. 1,810. It is now heard for a final decree upon both cases.]

W. G. Veazey and J. N. Edminster, for plaintiffs in the original suit and defendants in the cross suit.

Prout & Walker, for plaintiff in the cross suit and defendant in the original suit.

WHEELER, District Judge. This original bill is brought for relief against an alleged infringement of the extended terms of letters patent No. 14,119, dated January 15th, 1856, and No. 24,162, dated May 24th, 1859, and No. 25,148, dated August 16th, 1859, issued to Francis M. Strong and Thomas Ross, and of letters patent No. 35,348, dated May 20th, 1862, issued to John Howe, Jr., assignee of Strong, Ross and himself, all for improvements in weighing scales, and which the plaintiffs claim to own. The defendant admits use of the patented inventions, but claims ownership of them and the right to use them, and has filed the cross-bill, for a conveyance of such title as the defendants therein may have, and for relief against the setting up of title by the plaintiffs to the customers of the defendant, to the damage of its business, and the cause has been heard upon pleadings, proofs and argument of counsel.

The plaintiffs derive title from Strong and Ross, by a general release and assignment from Ross, of all his right, title and interest to such patents and extended terms, to Strong, dated March 31st, 1874, and a further like release and assignment, "excepting only such part of their interest as John Howe, Jr., assigned to the Howe Scale Company," dated September 15th, 1875; by an assignment from Strong to Prime, of all his right, title and interest to the patents and extended terms, but reserving a contingent interest in the profits, dated November 12th, 1875; and by assignment by Prime to Meacham of two-tenths, and to Luce of one-tenth, of what was assigned by Strong to Prime, each dated November 13th, 1875. And they claim, that, if Strong and Ross were affected by any outstanding equitable rights or titles, they are not, because they are bona fide purchasers, without notice. This latter claim may as well be determined here, because, if valid, it may save investigation of other questions. In their answer to the cross-bill they deny "that they knew, or had heard of, or suspected any of the claims or rights of the orator, as stated by the orator in said cross-bill, in and to said letters patent or extensions thereof." In each of the deeds from Prime to Meacham and to Luce, the deed from Strong to Prime is referred to as the source of Prime's title, and is described as "a certain conveyance to David W. Prime, of Brandon, Vt., in and to certain patents and royalties for 'improvements in weighing scales,' which are now in use by 'The Brandon Manufacturing Company, of Brandon, Vt.,' and are known as the Strong and Ross patents." The inventions were then, and for a long time had been, in full and open use by that company, and this reference to that use, in the very deeds to Meacham and Luce, was not only constructive notice to them of the fact of such use, but was express information of it, if they did not have that information otherwise. Cuyler v. Bradt, 2 Caines, Cas. 326. And this reference in the deed of Prime to the one to him, as being of patents so in use, shows, clearly, that he took his deed with full knowledge of that use; and the conveyances were so near together in point of time, that he must have had the fact of such use in his mind at the time of both buying and selling. This use by the defendant was possession of the monopoly, as far as that use extended, at least, which is as far as this controversy,

embraced in the original bill, extends; and this possession, when actually known, was constructive notice of the claim of right under which the possession and use were had, the same as the possession of land is notice to a purchaser of the legal title of any equitable right which the possessor may have. 1 Story, Eq. Jur. § 400; Pinney v. Fellows, 15 Vt. 525. Had they inquired by what right the use of these patented inventions was had, they would probably have learned the truth about it, and must now stand as if they had enquired and learned it, which leaves them with precisely the same rights as Strong, their grantor, had, which were the same that he and Ross had.

The right to the unexpired term of the patent of 1862 stands upon different footing from those to the extensions. Strong, Ross and Howe were joint inventors of that invention, and assigned to Howe, while an agreement between them relating to the use of all these and other patented inventions, dated September 1st, 1859, was in force, by the terms of which, if Howe or his representatives should elect not to continue the business of making scales, the rights of Howe, acquired by that agreement, would revert to Strong and Ross. Howe transferred the business of making scales to the Howe Scale Co. He and that company both got into bankruptcy; he has since died, and his representatives have not continued the business at all. It is argued, that this patent reverted, under the provisions of that contract. But, on the 1st of March, 1864, Strong and Ross made another conveyance of the patents which have been extended, and several others, to Howe, without mentioning the one of May 20th, 1862, and expressly rescinding the agreement of September 1st, 1859. This left the title to this patent in Howe, with no provision in force anywhere for depriving him of it. And that it was intended to remain there is apparent from the transactions. All the other inventions of Strong and Ross relating to scales were conveyed; they would not be likely to retain this fragment out of so many, all together constituting a whole; but, there was no necessity for inserting it in the new conveyance, for he already had full title to it. They have, however, an assignment of this patent from the administrators of Howe, and insist that they are entitled to hold it under that, because the assignment from the bankruptcy court to the assignee of Howe had not then been recorded, and the record title, at the patent office, appears to be in them. The bankrupt law (Rev. St. U. S. § 5046) vested all patent rights at once in the assignee. His title was like that which the administrators would have acquired if the bankrupt had died without bankruptcy proceedings being in force. It accrued by operation of the law, and such titles need not be recorded. The workings of the law are not matters for record in registries of titles

The deed from Strong and Ross to Howe,

of March 1st, 1864, besides conveying the "inventions, improvements and patents," contained this further covenant: "And we, the said Strong and Ross, do hereby covenant and agree to sign all necessary papers for securing extensions on any patents heretofore granted, or hereby assigned or that may hereafter be assigned, to said Howe, and for said Howe's benefit. And we also agree to sign, whenever called upon, any papers which may be necessary to perfect the rights of said Howe under this assignment," with habendum to his heirs, executors, administrators and assigns. Although the statutes in force then, and under which the extensions were granted, seemed to contemplate that extensions should be granted only to inventors, for their own benefit, or to their personal representatives, there is no doubt, under the construction which has been given to them, but that, by appropriate instruments and words of conveyance, they could be conveyed wholly in advance. Philadelphia, W. & B. R. Co. v. Trimble, 10 Wall. [77 U. S.] 367. Nor but that an agreement for their conveyance, made beforehand, would be binding in equity. Hartshorn v. Day, 19 How. [86 U. S.] 211; Newell v. West [Case No. 10,150]. In Curtis on Patents (section 207) it is said: "It is clear, that the inchoate right to obtain an extension under a standing law, may be conveyed or controlled in advance, by the party who has the power to obtain and make it perfect; and it seems to be equally clear, that an inventor, either before or after he has obtained one patent, may so deal with the possibility of obtaining future patents on his invention, as to vest an interest in such future patents in his assignee or grantee. The question, in either case, will be, whether he has conveyed, or covenanted to convey, a future contingent interest." Hendrie v. Sayles, 98 U. S. 546. is to the same effect. It may be, that, under the strict construction put upon such an instrument in respect to extensions, by the supreme court, in Wilson v. Rousseau, 4 How. [45 U. S.] 646, this deed did not, by its own force, convey these extensions, although an intention, on the part of the grantors, to part with their whole interest in the inventions, including extensions and everything pertaining to them, is quite apparent. It is urged, however, that it is not even a covenant to convey, but is merely a covenant to procure extensions for themselves, if Howe should desire to have them, and have the use of the patents by paying for it as they should agree, rather than to have the inventions left to the public at the expiration of the original terms. They covenanted distinctly to sign all papers necessary for procuring extensions. Had they stopped there, it might be argued, in view of the strict construction before mentioned, that they were to do this for the benefit of themselves, to whom alone extensions could be granted, although then the argument would be somewhat strained. But, they went fur-

ther, and added, "for said Howe's benefit." This could mean only one thing, and that was, that Howe should have the extensions. After making this covenant they could not, with any show of justice, claim the benefit of any papers executed to procure extensions of these patents, to the exclusion of Howe or of his assignees. It was like a covenant to stand seized, and, in equity certainly, equivalent to a grant of the extensions, as such a covenant relating to land would be, and at law even. under the statute of uses. Milburn v. Salkeld, Willes, 673. The patent office understood it as a grant, and, when the application for the extension first applied for was made, regarded the effect of it as standing in the way of the rule requiring inventors to be the owners of extensions, if granted.

As, in equity, they parted with their rights to the extensions, they are not, in this suit in equity, entitled to any relief for an infringement of those rights, without showing, in some way, that those rights have been restored, so as to be infringed in their hands, or that they stand upon the rights of those owning them. They are claimed to have been restored in several ways. One is by the assignment to Strong of a note given by Howe to Ross and indorsed by him, for his share of the price of the patents, and secured by a lien upon them, with its securities. There are plain reasons why this claim is groundless. One of these is, that the lien never covered the extensions at all. Another is, that the note was proved as an unsecured claim, against the estate of Howe in bankruptcy, by the endorsee, of whom Strong obtained the assignment, and was discharged as such, which would have left the security, if there had been any. the property of the estate.

They also claim, that Strong was restored to, or acquired some rights by, an assignment of the extensions from two of three administrators of Howe. On the 17th of April, 1868, Howe conveyed the patents assigned to him by Strong and Ross to the Howe Scale Co., by deed, and in that deed was this recital: "And whereas I, on the 29th day of June, A. D. 1864, did sell, and agree to assign and convey, to the Howe Scale Company, (a corporation duly organized under the laws of the state of Vermont,) all of the aforesaid inventions and letters patent. And, whereas, I also agreed to assign and convey any further patents pertaining to scales or weighing apparatus, which might be granted to the said Strong and Ross and conveyed to me." The extensions had not then been granted, and no other mention was made of anything that would cover them, in that instrument. But, the words, "further patents," would cover them; and this recital was of an agreement on his part to convey them to the Howe Scale Co., the grantee in, and other party to, the deed. And this recital by Howe of an agreement by him to convey them, while he would otherwise hold the eq-

uitable title to them, is direct evidence against those claiming under him or his administrators since then, as an admission against his title and interest, that this title and right were subject to that agreement, which the recital is also evidence that he made, and from which it is found as a fact that he did make it. Downs v. Belden, 46 Vt. 674; Wing v. Hall, 47 Vt. 182; Wheeler v. Wheeler, Id. 637. This instrument was well known to Strong as well as to the administrators, because it is expressly referred to by date and place of record, in their deed to him, and they must have known of this agreement of Howe with the Howe Scale Co. They are certainly affected with presumptive notice of it. Newl. Cont. 511. The conveyance to Strong was made subject to the interest conveyed by Howe to the Howe Scale Co. "in letters patent as enumerated and conveyed" by that instrument, which would come very near to this equitable right, although strictly not including it. So, the Howe Scale Co. had acquired the equitable right to the extensions, and Strong, if he purchased anything, took it subject to that right. But, there was nothing left in the administrators, or to them. of any right to the patents. The provisions of the bankrupt law not only vested the title to patent rights which the bankrupt had, in the assignee, but all rights in equity, and choses in action, which would cover the whole. Rev. St. U. S. § 5046. It is insisted, that, as the assignee of Howe in bankruptcy did not claim the extensions, the statute of limitations to two years, of actions against and by him; would cut off all his rights. This may be true But that limitation commences to run only from the time when the cause of action accrues. Id. § 5057. Soon after his rights as assignee accrued, the defendant began to use these inventions, under a conveyance from him as assignee of the Howe Scale Co. Neither the administrators of Howe, or Strong and Ross, or either of them, were using them or claiming them, or doing anything by which any cause of action accrued to him, and there was no cause of action to be barred in their favor. The defendant was using the inventions when the extensions were severally granted, and has continued the use ever since, and more than two years elapsed after the granting of the last one, before the commencement of this suit. It is said further, that, as Howe had only an equitable right, and the legal title was somewhere else, and the equitable right only passed to the assignee, he should have brought a proceeding in equity, to enforce the equitable right, and that, not having done so for the space of two years, the equitable right is barred and the whole interest left where the legal title is. But, the right of Howe was to have the necessary papers executed by Strong and Ross for procuring the extensions. for his benefit. Before the time arrived within which by law applications for extensions could be

made, or for any of them, and on the 6th of May, 1869, the assignee of the Howe Scale Co. conveyed to Nathan T. Sprague, Jr., all its property, including many patents, among them these which have been extended, and also "all of the interest or right the said Howe Scale Co. has in and to any and all other patents, by virtue of any or all assignments heretofore made to the said Scale Co., whenever or by whomsoever made." This was broad enough to carry the equitable rights which that company had to these extensions. And, in the same language, Sprague made a like conveyance of the whole to the defendant, on the 9th of June, 1869. So, when the extensions were granted, the assignee, either as of Howe or of that company, had not any equitable right to enforce. The whole right in that behalf was in the defendant, who had no occasion then to enforce it, nor even until about the time of bringing this suit, for, until that time, all yielded to such right without question.

The statutes under which the extensions were granted authorized the granting them, if it should appear, "having due regard to •the public interest therein, that it is just and proper that the term of the patent should be extended, by reason of the patentee, without neglect or fault on his part, having failed to obtain, from the use and sale of his invention, a reasonable remuneration for the time, ingenuity, and expense bestowed upon the same, and the introduction thereof into use." Act July 4, 1836, § 18 (5 Stat. 124). This language would seem to contemplate that the extension should be to the inventor directly, or so that he would receive the benefit of it, if granted, to make up to him the reasonable remuneration which he had failed to obtain. The course of the patent office was in accordance with this idea, and it required that it should be made to appear that the inventors would own some substantial interest in the extensions, so that they would be benefited thereby, before they would be granted. This became known to all concerned in procuring these extensions. While the application for the extension of the patent of January 15th, 1856, was pending, all the conveyances and assignments, mentioned had been recorded, except that from Sprague to the defendant. The office construed them as showing that Strong and Ross, the inventors, would not own, nor take any benefit from, the extension, and, under the practice, this stood in the way of granting the extension. To obviate this difficulty, Sprague, acting for and in the interest of the defendant, made an assignment of all his right to that patent and invention in the states of New Hampshire and Connecticut, to Strong and Ross, which did not answer the purpose. Then Howe, who was employed by the defendant to, among other things, assist in procuring the extension, acting in the interest of the defendant, and not knowing of the record of the other conveyances, made an assignment

to Strong and Ross of all his interest in and right to the extended term of that patent by virtue of the conveyance of March 1st, 1864. This also failed of satisfying the patent office, and, on the 15th of November, 1870, Sprague, acting as before, made a full assignment of the extended term to Strong and Ross, whereupon it was granted. The conveyance from Sprague to the defendant was recorded before the applications for the other extensions were made, and, in advance of each, the defendant assigned the extended term to Strong and Ross, for the purpose, as before, of making it appear that they would own the extensions, if granted, and thereupon they were granted. All the proceedings in respect to procuring the extensions were had for and at the expense of the defendant, and Strong and Ross executed all the papers which they executed at the request of the defendant, in pursuance of the covenants and agreements in their conveyance to Howe, of March 1st, 1864. This was done upon the full understanding, on the part of both Strong and Ross and the defendant, that the rights of Howe under that agreement had passed to the defendant; that Strong and Ross were in duty bound to execute the papers for the benefit of the defendant; that the assignments to them were merely for the purpose of making it appear that they would own the extensions; and that the extensions would really and in fact belong to the defendant by virtue of the rights which had before been, or supposed to have been, acquired. Ross suggested an assignment from himself and Strong, according to the understanding, but none was made. The business relating to procuring the extensions was transacted mainly through written correspondence, and the purposes, intentions and understandings of the parties, as found and stated, fully appear from it.

It is claimed, that these conveyances, notwithstanding the circumstances under which they were made, restored the title and right to the extensions to Strong and Ross, or estopped the defendant from denying the right of Strong and Ross to them. The apparent legal title to the extensions came to Strong and Ross; but the legal title to a patent may be in one person, and the equitable right to it in another; and this applies to extensions as well as to original patents, as fully appears from the principles and authorities before referred to. Hartshorn v. Day, 19 How. [60 U. S.] 211; Newell v. West [Case No. 10,150]. No consideration whatever was paid by Strong and Ross for the reassignments of the extensions; on the understanding stated, they were not to have them, but were to have merely the color of legal title to them, for the purpose which has passed. There are no just grounds for any estoppel in their favor, or in favor of the plaintiffs. They were not deceived into doing anything which they otherwise would not have done, by the conveyances, or the representations that the extensions would be for

their benefit. The misrepresentation was to the patent office, not to them. They fully understood the whole, and participated in it. As between them and the defendant, the estoppel, if any should be allowed to operate, would work the other way. These inventions were the foundation of the defendant's business, and large outlays were made in establishing it, on the expectation of having them; and it is not probable that the defendant would have permitted them to be granted without opposition, for Strong and Ross to have them, and much less, that the expenses of obtaining them would have been paid, to secure them to Strong and Ross. They cannot, in good faith, now claim the extensions, and, in equity, their claim cannot properly be enforced. Ross, in fact, never has claimed them, but has merely quitclaimed his rights, if any, to Strong.

These assignments were, however, made to deceive the patent office, and the parties, and their rights to relief in respect to the assignments, are to be considered as they are affected by that circumstance. The grant of these monopolies, like that of all other patents, was from the sovereign power of the general government, under the constitution. The patent office is the instrument of the government, in making the grants, under the law. The extensions would be detrimental to the public, to precisely the same extent that they would be beneficial to the grantees. The assignments, "by a feigned countenance and show of words and sentences, as though the same were made bona fide," in the language of the statute (27 Eliz. c. 4), induced the patent office to grant the extensions, when it would not have done so, if the real purpose of making the assignments had been known; and now it is claimed by the orators, that the assignments so made shall be held operative, and the defendant not allowed to set up the arrangement under which they were made, in defence, and by the defendant, that the title created by them, if any, shall be held in trust for the defendant, and that the trust be executed by decree in the cross cause. The statutes 13 Eliz. c. 5, and 27 Eliz. c. 4, made all conveyances within their purview void as to all those sought to be defrauded, and left them, or made them, binding between the parties to them. Those statutes are not a part of the laws of the United States relating to patents; and, if the laws of the state would control, in any degree, these conveyances would not come within the provisions of those statutes, as adopted in Vermont. Gen. St. Vt. p. 672, § 32. So, these conveyances must stand as at the common law. They were wholly without any consideration, and have never been executed by any delivery of possession. The defendant has all the while had the inventions in use, and the letters patent themselves, with the endorsement of extension thereon. The conveyances within the statutes cited, and those within 7 & 8 Wm. III. c. 25, and 10 Anne, c. 23, making

conveyances for the purpose of conferring a right to vote void, only as between the parties thereto, have generally been held to be valid between the parties to them only by force of the express provisions of the statutes to that effect. Twyne's Case, 3 Reporter [Coke] 80b; Phillpotts v. Phillpotts, 1 Eng. Law & Eq. 339; Dyer v. Homer, 22 Pick. 253. And they would seem to have been void at the common law, at least so far as that they would not, as conveyances, afford sufficient foundation for a cause of action resting upon themselves alone. Alexander v. Newman, 2 C. B. 122, and 15 Law J. pt. 2 (C. P.) p. 134. The orators here have not any claim under these conveyances, except what lies wholly in action. They are not defending any possession taken under the conveyances, but are asking relief wholly, as to this part of the case, upon the strength of them. Unless they are held valid and operative, as conveyances, as those under the statutes mentioned were held, the orators have no case. The orator in the cross-bill cannot have the relief sought there, without having the conveyances held operative, and the title under them decreed to be a trust merely, and the trust decreed to be executed. It has been suggested, on the part of the defendant in the original bill and orator in the cross-bill, that all were equally in the wrong as to the purpose of these conveyances, and that, if they should be held inoperative, on account of this purpose, the title to the extensions would be left in the defendant. This might be true, if the extensions would have been in existence, with a title to them resting somewhere, without these conveyances having been made at all. But, the extensions were not in existence when the conveyances were made, and no one had any vested right to have them granted. They were not like original patents, or reissues, in that respect, but were grantable only in the discretion of the commissioner. Without these conveyances the extensions would not have been granted at all. Neither party can be aided here, without aiding the purpose for which the conveyances were made. The doctrine is universal, as it is salutary, that the courts of a country will not aid parties in what is prejudicial to the state. Collins v. Blantern, 2 Wils. 341; Law v. Law, 3 P. Wms. 391; Hanington v. Du Chatel, 1 Brown, Ch. 124; Parsons v. Thompson, 1 H. Bl. 322; Pingry v. Washburn, 1 Aikens, 264; Fuller v. Dame, 18 Pick. 472; Powers v. Skinner, 34 Vt. 274; Marshall v. Baltimore & O. R. Co., 16 How. [57 U. S.] 314. This case seems to fall within that principle, as to these conveyances, and, as neither party has title except through or in consequence of them, this court will leave the parties, in those respects, where it finds them.

The original term of one of the patents, and the right to apply for an extension under the general law, expired before any application for an extension was made, and a special act

of congress was passed, approved July 15th, 1870 (16 Stat. 657), granting leave to Strong and Ross to make application to the commissioner of patents for an extension, and authorizing him to consider and determine it in the same manner as if it had been made in due season. It is claimed by the orators, that the right to that extension accrued under this special grant, and that Strong and Ross thereby acquired an express title to it. which they have never parted with but to the orators. There is no question but that a grant of a patent, or of an extension of a patent, by congress, as a bounty, would enure to the benefit of the grantees only, and that no right to it could be acquired, except by express conveyance from them. Wilson v. Rousseau, 4 How. [45 U. S.] 646. But this was not such a case. Congress merely removed a limitation, and left the commissioner to grant or refuse the application, precisely as he would under the general law. It was not a special grant, but the general law was made to cover the case. And the passage of. this act was procured by the defendant as a part of the proceedings to obtain the extensions, in the same interest, and for the same purpose, and upon the same understanding. The position of the parties in respect to it is the same as in respect to the others.

These considerations fully dispose of the claim of the orator in the cross-bill for relief against setting up a false title, or falsely asserting that this orator has no title, to customers, causing damage, for, they show a want of foundation for maintaining such a claim. even if this court would have jurisdiction for such a cause of action, between these parties, who are citizens of the same state. But, such a claim would involve no federal question. of which this court could take jurisdiction between such parties. Hartell v. Tilghman, 99 U. S. 547.

The bill alleges, that the extension passed from Strong and Ross to Howe, by the conveyances stated. The orators, at the hearing, asked leave, by motion, to withdraw those allegations, so as not to be bound by them. The decision upon this motion was reserved. In the view taken of the effect of the conveyances, the amendment would be of no importance. If there should be an appeal, it might become of importance, and its allowance here be of importance. The allegation is one of construction rather than of a fact, and, perhaps, the orators ought not to be bound by it, if it should become material, further than the fact that it was made might show the understanding of those making it. That fact would remain, if the technical effect of it, as a pleading, should be obviated by the amendment. if the record should be left so as to show the whole. Therefore. the motion is granted. to the extent of allowing an amendment striking out those allegations to be filed separately. without obliterating them as they stand in the original bill.

The costs upon the original and cross-bills

are probably so nearly equal, that none are allowed either way.

Let a decree be entered dismissing the bill and cross-bill.