DUEBER WATCH-CASE MANUF'G CO. *v.* DALZELL *et al.*

(*Circuit Court, S. D. New York.* May 14, 1889.)

1. PATENTS FOR INVENTIONS—ASSIGNMENT—NOTICE.

Where it was agreed that certain inventions should be complainant's property, and be patented for its benefit, and where defendant knew that the inventions were in use in complainant's factory, and that the inventor made them while an employé of complainant, and defendant made no inquiries as to whether complainant claimed any right to use the inventions, but took an exclusive license from the inventor, defendant is chargeable with constructive notice of the rights of complainant.

2. SAME.

D. stated that certain inventions of his were made before he was employed for complainant, and the first products for complainant were made with his own appliances. He was employed by complainant to experiment with reference to the subject of the inventions, was given several months time, and furnished with appliances, and accomplished the desired object by devices which had been previously used for analogous purposes. Complainant's president testified that D. suggested the patenting of the inventions for complainant's benefit, saying that if complainant would pay the expense he (D.) wanted nothing for himself. D testified that he suggested that the inventions were worthy of patents, and he would obtain patents, but could not then spare the money, and that the president said that he (D.) could have what money he wanted, and should be protected as if he had used his own money. Though D. remained in complainant's employment several months after the principal patents were obtained, no attempt to agree definitely as to their respective rights was made. The expense of procuring the patents was not charged by complainant to D. Complainant's allegations as to the agreement in different suits were somewhat at variance, and its president responded evasively to some of the interrogatories. *Held,* that complainant was entitled to the patents.

In Equity.

Bill by the Dueber Watch-Case Manufacturing Company against Dalzell and the Fahys Watch-Case Company.

*John H. V. Arnold* and *James Moore,* for complainant.

*Bowman & Bowman,* (*Edmund Wetmore,* of counsel,) for the Fahys Watch-Case Company.

WALLACE, J. The defendant Dalzell and the Fahys Watch-Case Company having filed a bill against the complainant for infringement of two patents granted to Dalzell for inventions in apparatus for manufacturing cores for watch-crowns, the complainant interposed a plea averring in substance that prior to the making application for the patents it was agreed between Dalzell and the complainant that the inventions should be the property of the complainant, and be patented for its benefit. Thereafter the complainant filed this bill against Dalzell and the Fahys Watch-Case Company, the exclusive licensee under the patents, to compel a conveyance of the patents to it, together with three other patents subsequently granted to Dalzell for other improvements in apparatus for making parts of watch-cases. The case presents the issue of fact whether such an agreement was made between Dalzell and the complainant, and, if it was

made, whether the Fahys Watch-Case Company had knowledge of the agreement, or of facts sufficient to charge it with notice.

The question whether such an agreement was made between Dalzell and the complainant depends wholly upon oral testimony, and primarily upon that of Mr. Dueber, the president and principal stockholder of the complainant, on the one side, and Mr. Dalzell upon the other. Dueber testifies that in the spring of 1885 Dalzell suggested the advisability of patenting the inventions for the benefit of the complainant, stating that if the company would pay the expense of getting the patents he would not want anything for himself. Dalzell testifies that he suggested to Dueber that his inventions were worthy of patents, and he was going to patent them, but that he could not spare the money for doing so at that time; whereupon Dueber, in substance, told him to go on, that he could have what money he wanted, and should be protected as though he had used his own money to obtain the patents. The theories of the respective parties are such that one or the other of these statements must be accepted as substantially true, and there is no middle ground upon which the testimony of these two witnesses can be reconciled with a different contract. Either there was a distinct understanding that the patents were to be obtained exclusively for the benefit of the Dueber Company, or there was one that they were to be obtained exclusively for the benefit of Mr. Dalzell.

In the endeavor to arrive at the truth the record has been thoroughly studied, and it would seem to be quite useless to discuss the testimony of the various witnesses in detail. Not only the main issue, but all the collateral issues, and the leading facts which bear upon them, are involved in a sharp conflict of testimony. The conclusion is reached that the version of Mr. Dueber is the true one. The more rational version of the facts is that the inventions were made by Dalzell while he was in the employ of the Dueber Company, after he had been working for several months upon them as a tool-maker, pursuant to the instructions of the company, and at its expense, in the effort to perfect what its mechanical superintendent had begun, but had laid aside for a more convenient time. It must be assumed that until Dalzell had perfected the dies and forces for making watch cores they had not previously been used for that purpose. Nevertheless, the use of such devices for analogous purposes was so well known as to be a matter of judicial notice; and it is not unreasonable to suppose that an intelligent mechanic like Dalzell, skilled in the particular calling, who was directed to experiment with that specific end in view, supplied with the necessary appliances, and given several months in which to do it, would succeed, as he did, in adapting dies and forces to the new occasion in which they were to be employed. Dalzell accomplished what he was expected to accomplish, and what he was paid to do. By this it is not meant to suggest that what he did was not invention, but it is of some significance in explaining why, when Dalzell suggested patenting the inventions, he did not make any claim for compensation; why the company, although willing to incur the expense of obtaining patents, did not expect to pay him

for them; why no formal agreement was made at the time it was concluded to patent the inventions; and why, during the several months he remained in the employ of the company after the principal patents were obtained, no attempt was made on his part or on the part of the company to come to a definite understanding about their respective rights. The company paid out about $500 to the patent solicitor for his fees and expenses, and the fees of the patent-office, in patenting the inventions. These items were not charged to Dalzell, but went into the general expense account of the company. Dalzell was irresponsible, and it is altogether unlikely that the company would have incurred this expense without any attempt to make terms with him if its officers had not understood that the patents were to belong to the company. This view of the facts of course discredits the integrity of Dalzell as a witness. His honesty would not necessarily be impeached because his testimony as to what took place between Dueber and himself in respect to the arrangement for patenting the inventions is not accepted as correct. Circumstances are disclosed in the record which suggest that when he found the company was willing to incur the expense of patenting the inventions, or soon after, he began to think he ought to be remunerated for what he had done, and subsequently pursuaded himself that the complainant was treating him unfairly in this respect. It would be quite consonant with common experience if he then convinced himself that the company had promised him compensation, and came honestly to believe that some such conversation had occurred as that which he has detailed. But he asserts that he had perfected the inventions which are the subject of the first two patents before he entered the service of the complainant, and he testifies that the first watch-crown cores produced by him for the Dueber company were made with his own dies, forces, and other tools, brought into the factory by his brother, Rudolph Dalzell, who came there to work in the fall of 1883. There is no satisfactory testimony in the case which substantiates these assertions, and the circumstantial evidence, as well as the direct evidence, seems convincing to the contrary. His conduct at the time of leaving the service of the company was disingenuous and disloyal, and militates against his own belief in his pretensions. If at the time he had distinctly claimed that the patents were his property, or he was entitled to be paid for his inventions, and had taken the position that he would not remain unless some satisfactory arrangement was made with him by the company, there would be less reason for suspecting his integrity and good faith.

The circumstance has not been overlooked that the terms of the agreement, as alleged in the bill, depart somewhat from those alleged in the plea of the complainant to the bill of Dalzell and the Fahys Watch-Case Company; nor have the evasive answers been overlooked of Dueber himself to some of the questions which were propounded to him. These matters, as well as the testimony of the many witnesses for the defendants tending to corroborate Dalzell's version of the facts, have been duly considered. The case is one in which different minds may well reach a contrary opinion of the merits. Nevertheless, the impression originally

derived at the hearing of the cause, adverse to the theory that the inventions were patented for the benefit of Dalzell, has ripened into a conviction after a critical examination of the record.

When the Fahys Watch-Case Company employed Dalzell, and acquired a license under the patents, its officers knew that the inventions were in use at the factory of the complainant, and that Dalzell had made the apparatus there for making the crown cores while an employé of the complainant. Its officers entertained the negotiations with Dalzell at a time when they supposed he was still an employé of the Dueber Company. They made no inquiries of the Dueber Company, nor even of Dalzell himself, to ascertain whether the complainant had or claimed to have any right to use the inventions. Under these circumstances, upon the authority of *Prime* v. *Manufacturing Co.*, 16 Blatchf. 453, (decided in this circuit;) the Fahys Watch-Case Company is chargeable with constructive notice of the complainant's rights, and must be held responsible to the extent of the knowledge which its officers might have obtained by making inquiry. A decree is ordered for the complainant.